**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Crim. No. 18-CR-341 (APM)** |
| | : | |
| **v.** | : | |
| | : | |
| **JORDAN LASSITER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 15 months of incarceration, followed by one year of supervised release. The government is not requesting any fines or restitution in this case other than required court costs. In support of this sentence, the government states the following.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 15, 2018, a federal grand jury for the United States District Court for the District of Columbia returned a one-count indictment charging the defendant Jordan Lassiter with Escape from Custody, in violation of 18 U.S.C. § 751(a). On December 17, 2018, the defendant pled guilty to the sole count in the indictment, without any accompanying plea agreement. The parties agree as to the factual proffer in this case, but disagree as to the defendant's criminal history category.

*Factual Proffer*

On June 29, 2016, in Superior Court case number 2016 CF3 8360, the defendant pled guilty and was convicted of one count of Attempted Robbery, in violation of 22 D.C. Code, Section 2802

(2001 ed.). On November 10, 2016, the defendant was sentenced by D.C. Superior Court Judge Patricia Broderick to twelve (12) months of imprisonment, all suspended, followed by three years of supervised release and two years of supervised probation.

On June 2, 2017, as a result of a probation violation, the defendant was resentenced to 12 month of imprisonment, with 9 months suspended. On December 11, 2017, as a result of another probation violation, the defendant was resentenced to 12 months of imprisonment, with 3 months suspended. On that same day, the defendant was sentenced to an additional three months of imprisonment on a different case – 2016 CF3 14974 (Attempted Robbery) – with that sentence to run consecutive to the sentence in 2016 CF3 8360. On February 22, 2018, as a result of another probation violation, the defendant was resentenced to 12 months of imprisonment in 2016 CF3 8360, to run consecutive to the three months previously imposed in 2016 CF3 14974.

Until June of 2018, the defendant served his time at Federal Correctional Institution Cumberland for both cases. On June 5, 2018, the defendant started his halfway house placement at Hope Village, located at 2840 Langston Place Southeast, Washington, D.C. On September 29, 2018, at approximately 11:33 a.m., the defendant was observed by staff members walking out of the front door of his assigned housing building with his belongings. Staff members from the facility asked the defendant where he was going and the defendant responded "I'm gone". Because the defendant walked out of the facility willfully and in the presence of staff members, locator calls were not made. The defendant was placed on escape status and dropped from the official count for the center. The defendant never returned to Hope Village. At the time of the Defendant's unauthorized departure from Hope Village on September 29, 2018, he was in the custody of the Attorney General, or confinement in an institution where the prisoner was confined by the direction of the Attorney General.

**DISCUSSION AND RECOMMENDATION**

**I.      Generally Applicable Legal Principles**

When determining the appropriate sentence, the district court should consider all of the

applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596

(2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> > > (i) issued by the Sentencing Commission ...; and
> > > (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
> > (A) issued by the Sentencing Commission ... and
> > (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

## II.   Defendant's Sentencing Guidelines Calculation

### A.   Total Offense Level

The government maintains that the base offense level for this case is 13, pursuant to

U.S.S.G. § 2P1.1(a)(1). That section provides a base offense level of 13 when an escape from

custody occurs and "the custody or confinement is by virtue of an arrest on a charge of felony, or

conviction of any offense." The defendant's confinement here was due to a sentence given for a

release violation (rather than as part of the original sentence). The government maintains that an

order of custody for a supervised release violation must be confinement that is "by virtue of

conviction of any offense," as such confinement would not have occurred absent the conviction of

an offense. Three separate circuits have evaluated the same provision at issue in this case and have

found that the base offense level should be scored as 13 points. *See United States v. Patterson*, 230

F.3d 1168 (9th Cir. 2000); *United States v. Evans*, 159 F.3d 908 (4th Cir. 1998); and *United States*

*v. Pynes*, 5 F.3d 1139 (8th Cir. 1993). The government is not aware of any circuits that have

reached a contrary position and it does not appear that the District of Columbia Circuit has

addressed the issue.[1] Accordingly, the government requests that this Court follow the reasoning of

the Ninth, Fourth and Eighth Circuits and score the base offense level here as 13. That reasoning

is sound. As the *Patterson* court noted,

> Both *Evans* and *Pynes* chiefly rely upon a simple logical argument.
> If the defendant had not been convicted of the original crime, he
> would not have been sentenced to supervised release. If he had not
> been sentenced to supervised release, he would not have been under
> the conditions that he violated. Had he not violated the restrictions
> of his supervised release, the court could not have revoked his

---

[1] In *United States v. Weems*, 18-cr-136 (JDB), Judge John Bates ruled on this issue as well, finding the base offense level is 13; *see also United States v. Anderson*, 18-cr-152 (CRC) (finding the same); *United States v. Johnson*, 18-cr-269 (TFH) (finding the same); *United States v. Cook*, 18-cr-308 (RDM) (finding the same). *But see United States v. Halfacre*, 18-cr-125 (ABJ) (finding the opposite).

> release status and returned him to custody. His final custody,
> therefore, is "by virtue of" his original conviction.

*Patterson*, 230 F.3d at 1170. The *Pynes* court observed that, although not determinative, the previous version of § 2P1.1(a)(2), before it was changed to read "otherwise," stated that 8 was the applicable base offense level when the confinement was by virtue of "awaiting extradition, pursuant to designation as a recalcitrant witness, or as a result of a lawful arrest for a misdemeanor." *Pynes* at 1140.

The government also believes that a 4-point reduction under U.S.S.G. § 2P1.1(b)(3) should apply to the base offense level, as the defendant escaped from non-secure custody. This would result in an offense level of 9. The parties agree that a 2-point reduction is appropriate pursuant to U.S.S.G. § 3E1.1 given the defendant's acceptance of responsibility. The government therefore maintains that the total offense level in this case is 7. The government's assessment is consistent with the U.S. Probation Office's analysis.

## B.     Criminal History Category

Based on the Probation Office's analysis ("PSR"), the parties disagree about the defendant's criminal history. Below is a summary chart of the defendant's previous adult convictions and points attributable to them.

| Offense of Conviction (Date of Conviction) | Jurisdiction | Disposition | Points |
|---|---|---|---|
| Attempt to Commit Robbery (11/10/16) | Washington, D.C. (2016-CF3-8360) | 12 months, execution of sentence suspended as to all ("ess"), 3 years of supervised release, 2 years of probation | 3 points (U.S.S.G. § 4A1.1(a) and 1.2(k)(1)) |
| Attempt to Commit Robbery (11/10/16) | Washington, D.C. (2016-CF3-14974) | 12 months, ess as to all, 3 years of supervised release, 2 years of probation | 1 point (§4A1.1(c) and 1.2(k)) |

| Petit Larceny (05/08/17) | Fairfax County, VA (GC16251558) | $396 fines and court costs | 1 point (§4A1.1(c)) |
|---|---|---|---|
| Simple Assault (03/10/17) | Washington, D.C. (2017-CF3-2870) | 45 days, ess as to all but time served, 1 year probation | 2 points (§4A1.1(b)) |
| Resisting Arrest (02/20/18) | Washington, D.C. (2017-CMD-20568) | 76 days (time served) | 2 points (§4A1.1(b)) |
| Destruction of Property (misd.) (07/17/18) | Washington, D.C. (2018-CMD-8635) | 30 days, ess as to all, 1 year of unsupervised probation | 1 point (§4A1.1(c)) |
| Instant offense committed while under any criminal justice sentence | | | 2 points pursuant to §§4A1.1(d) and 4A1.2 |
| **Criminal History Score: 12 | Criminal History Category V** | | |

*Defendant's Objections*

    i.    <u>Simple Assault and Resisting Arrest Inclusion</u>

According to the defendant, he objects to the inclusion of the Simple Assault and Resisting Arrest convictions in the criminal history calculation (PSR, at 25). The government respectfully disagrees with the defendant and agrees with Probation. Unlike *United States v. Price*, 409 F.3d 436 (D.C. Cir. 2005), here, Probation verified both convictions, reviewing all available court documents, including the appropriate plea paperwork. Although Probation noted that there was no written proffer in the Resisting Arrest case, there is nothing to suggest that the other available court documents are incorrect or unverified. Moreover, undersigned counsel—as a practitioner in D.C. Superior Court—is aware that in Superior Court, most misdemeanor cases are resolved through written pleas, but orally provided proffers.

To the extent the defendant still maintains the unreliability of the convictions, the government notes that both convictions are reviewable online, through the D.C. Superior Court website, known as "Courtview." If contested, the government requests additional time to pull certified prior convictions for the Court.

ii.      "Double Counting"

According to the defendant, he objects to the inclusion of the 2 points pursuant to §§ 4A1.1(d) and 1.2. The defendant states that adding those points to the criminal history calculation represents "double counting, as an element of escape is to be under a criminal justice system" (PSR, at 26).

This is factually incorrect. An escape from custody can occur when a defendant is assigned to a halfway house as a part of pre-trial detention.[2] One can also be charged with aiding and abetting escape from custody without actually having been in custody. In either context, the 2-point enhancement for being under a sentence would not be applicable. This distinction has been relied upon by circuit courts of appeal to rebut any claim of unfairness by the addition of the two criminal history points in the escape context.

For example, in *United States v. Wright*, 891 F.2d 209, 211 (9th Cir. 1989), the defendant argued that the addition of two points "result[ed] in an unintended duplication of punishment . . . because every escape is from custody and that factor is figured into the base points for the offense." The United States Court of Appeals for the Ninth Circuit rejected that argument because "not every person who escapes need be serving a sentence; one may escape from pretrial custody." *Id.* In incorporating the two additional points, the Ninth Circuit stated that it was "not irrational or unlikely that the Sentencing Commission determined that when an escape is from confinement imposed by sentence, it should be punished more heavily than escape from some form of pretrial custody." *Id.* At least two other circuit courts of appeal have shared a similar sentiment. *See United*

---

[2] Placement in a halfway house as part of pretrial detention is a routine practice in this Court and in the District of Columbia Superior Court. For example, on May 2, 2018, Domenic Micheli (18-cr-115-PLF) was ordered to report to Hope Village as part of his pretrial confinement. Mr. Micheli never reported to Hope Village, left the jurisdiction, and subsequently killed his former employer with a hatchet in Tennessee a month later.

*States v. Goldbaum*, 879 F.2d 811, 814 (10th Cir. 1989) ("Because of the broad application of Guideline § 2P1.1 the Sentencing Commission may well have intended to differentiate the sentences" between a defendant who "escaped from prison" and one who "just assisted an escape or who only escaped from the custody of a police officer after a lawful arrest"). The United States Court of Appeals for the Third Circuit applied similar reasoning in *United States v. Ofchinick*, 877 F.2d 251, 256 (3rd Cir. 1989):

> We next consider [defendant's] contention that the district court erred in the computation of his criminal history category by adding 2 points since he escaped while under the criminal justice sentence of imprisonment, guideline § 4A1.1(d), even though an element of the offense of escape was that he be in custody. . . . We reject this contention. While it is true that only a person in custody may escape, obviously persons in custody can commit crimes which can be committed by other persons as well. For example, an inmate or a visitor can assault a prison guard. If such an assault is committed by an inmate, it could not reasonably be urged that the sentence he was serving at that time be excluded in the computation of his criminal history category, as the defendant's status as an inmate would not be an element of the offense and thus could not have been reflected in the applicable guideline, § 2A2.2. The same thing is true under guideline § 2P1.1(a)(1). That guideline includes offenses for instituting or assisting escapes as well as for an escape itself and sets a base offense level at 13. Inasmuch as persons not in custody may be sentenced under the guideline, it is inconceivable that the Sentencing Commission intended the establishment of a base offense level therein to impact on the computation of the criminal history category. A contrary ruling would mean that an inmate who escaped, whose only criminal history was the offense for which he was in custody when he escaped, would be subject to the same sentencing range as a person who had no criminal history and assisted an inmate to escape. We refuse to construe the guidelines to reach such an absurd result.

Accordingly, the Government contends that there should not be an automatic departure in every escape case because of a perceived unfairness that other appellate courts have rejected and found to be an appropriate balancing of the equities by the Sentencing Commission. As will be discussed in the Government's sentencing memorandum, the Government also does not believe a departure here is warranted — as part of a fact specific and independent inquiry — where, as here, the Defendant has multiple convictions and a dreadful record of probationary compliance.

### C.      Sentencing Guideline Range

Thus, a total offense level of 7 and criminal history category of V result in a guideline imprisonment range of 12-18 months. The guideline range is in Zone C. The guideline term of supervised release is 1 to 3 years. The parties agree that the maximum term of imprisonment is 5 years and the maximum term of supervised release is not more than 3 years.

### III.      Sentencing Recommendation

As stated above, the government requests a sentence of 15 months of incarceration followed by 1 year of supervised release. This sentence is at the middle of the applicable guidelines range.

### A.      The Nature of the Offense

Although the defendant walked away from the halfway house months into his sentence, the defendant was serving a sentence for multiple probation violations. Moreover, the defendant was not subsequently arrested until November 21, 2018, meaning that he remained out of custody for a period of two months. The government recognizes that this is not a violent offense nor one with an identifiable victim, but the criminal justice system cannot operate in a fair manner if individuals can simply walk away from a properly adjudicated sentence without any consequences. Moreover, it appears that the defendant flaunted his departure by announcing his exit, despite knowing that the reason he was in the halfway house was because of his prolonged incarceration due to his own misbehavior.

The government does not want to overstate the value or severity of any one particular case, but there is no rational explanation for why the defendant decided to leave. Even if there was such an explanation, the defendant took no steps at all to address whatever motivated him to leave. Moreover, the defendant at no point alerted any authority as to his absence. As the Court knows,

being in a halfway house is something the defendant elects, and then agrees to abide by its conditions. Being at a halfway house is a privilege that allows the defendant more access to the community and less restrictions than he would have had a federal correctional institute. Simply put, the defendant took this opportunity for granted.

### B.       The History and Characteristics of the Defendant

The defendant has a lengthy criminal history and has spent significant periods of his life incarcerated because of these convictions (at an extremely young age to boot). Without rehashing the circumstances of every one of his prior convictions, it is sufficient to state the following: 1) the defendant has a history of committing violent crime and stealing from individuals using force; 2) the defendant has accrued this criminal history in a rather short period; and 3) the defendant has performed atrociously when placed on probation.

As to the last part, the defendant has routinely disrespected the criminal justice system as part of this history. His rearrests, his failure to abide by release conditions, and his almost constant revocation of probationary sentences should tell the Court everything it needs to know about how seriously the defendant takes this process. Moreover, the defendant previously left Hope Village without authorization on June 8, 2018. As a result of that escape incident, the defendant lost his phone privileges and good conduct time was disallowed. A month later, he incurred an additional infraction— for smoking marijuana—and lost various other privileges, including email and commissary. Suffice it to say, the defendant has not learned his lesson, and his prior punishments did little to abate his misbehavior. Notably, during the defendant's incarceration and probation, he did not complete any educational programs. Time after time, the defendant has received the benefit of a plea bargain, only to waste the opportunity to rehabilitate. Time after time, the defendant has received multiple chances by various supervising courts to reassess his behavior, to no avail.

Unfortunately, the defendant—based on his extensive criminal history and his past conduct—is simply not ready, capable, or willing to reform. The government sincerely hopes that the Court's ultimate sentence will reinvigorate the defendant toward following a better path. Otherwise, he will likely be unable to ever transition out of this downward spiral.

### C.     The Need for the Sentence Imposed

The government believes that a sentence of incarceration in the middle of the guidelines is appropriate here, given the facts and circumstances of his Escape.[3] His escape, the length of his time while he remained out of custody, his prior criminal record, and his prior disciplinary record indicate that although the defendant may have redeeming qualities, he has not shown himself willing to take advantage of court instruction to better his life. Although the government could request a sentence at the high-end of the applicable sentencing guidelines, the government acknowledges the defendant's willingness to accept responsibility at an early stage. The government also notes that the defendant—although remaining out of custody for a lengthy time— did not commit any known crimes while on escape status. But the government does not and cannot ignore his history.[4] The government therefore recommends a sentence of 15 months of incarceration, to be followed by 1 year of supervised release, and concurs with the Probation Office's recommendations as outlined on pages 20-22 of the PSR.

---

[3] Given his escape, the government would object to any sentence of probation or community confinement. Such a punishment would not "promote respect for the law." 18 U.S.C. § 3553(a)(2)(A). As noted by Probation, he is ineligible for probation. PSR, at 22 ¶ 80.

[4] There are no known factors that would warrant a departure or a variance from the applicable guidelines. *See also* PSR, at 23-24 ¶ 87-88.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

By: _____/s/_____
Gregory Rosen
VA Bar No. 82584
Assistant United States Attorney
District of Columbia
Violent Crimes & Narcotics Trafficking Section
555 4th Street, NW, Room 4828
Washington, DC 20530
(202) 252-6932
Gregory.rosen@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on counsel for

Defendant, David Bos, Esq. on January 24, 2019.


_____/s/_____
Gregory P. Rosen
Assistant United States Attorney

12